BRODY R. WIGHT, ESQ.
Nevada Bar No. 13615
TROUTMAN PEPPER HAMILTON SANDERS LLP
8985 S. Eastern Ave., Ste. 200, Las Vegas, NV 89123 (*Nevada Office*)
600 Peachtree St. NE #3000, Atlanta, GA 30308 (*Corporate Office*)
Telephone: (470) 832-5586
Email: brody.wight@troutman.com

KEVIN F. KIEFFER
Nevada Bar No. 7045
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: (949) 622-2700
Email: kevin.kieffer@troutman.com

*Attorneys for Plaintiff*
Beazley Underwriting Ltd

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BEAZLEY UNDERWRITING LTD, a foreign corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JUMPER MAN PARTY RENTALS, LLC, a Nevada limited liability company,<br><br>　　　　Defendant. | Case No. 2:22-cv-1884<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND RECOUPMENT**<br><br>**(1) Declaratory Relief – No Duty to Defend – Policy Section XXX;**<br>**(2) Declaratory Relief – No Duty to Indemnify – Policy Section XXX;**<br>**(3) Declaratory Relief – No Duty to Defend – Policy Section XXXII;**<br>**(4) Declaratory Relief – No Duty to Indemnify – Policy Section XXXII;**<br>**(5) Recoupment** |

Plaintiff Beazley Underwriting Ltd ("Beazley") brings this Complaint against defendant Jumper Man Party Rentals, LLC ("Jumper Man").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) since a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## THE PARTIES

3. Beazley is the lead underwriter of the subject Event Liability Claims Made and Reported Insurance Policy that was underwritten by members of Lloyd's Syndicates 2623/623. Beazley is a company incorporated in England and Wales with its principal place of business in the United Kingdom, and is the sole member of Syndicate 2623. Beazley is suing in its name only as the lead underwriter of the subject insurance Policy, but a determination in this action will be binding on all of the Policy's underwriters ("Underwriters").

4. Jumper Man is a limited liability company organized and existing under Nevada law with its principal place of business in Las Vegas, Nevada. Upon information and belief, all of the members or Jumper Man are individuals residing in the state of Nevada. As such, Jumper Man is a citizen of Nevada.

## INTRODUCTION

5. This is an action by Beazley seeking declarations concerning the rights and obligations of the parties under Event Liability Claims Made and Reported Insurance Policy No. ZISMB1227 issued to Jumper Man for the July 8, 2020 to July 8, 2021 Policy Period (the "Policy") in connection with bodily injury claims (collectively, the "Bodily Injury Claim") arising out of an April 30, 2021 event in Henderson, Nevada involving a "trackless train" rented from and operated by Jumper Man (the "Event").

6. In this Complaint, Beazley seeks, among things, a judgment (1) declaring that no coverage is afforded under the Policy for the Bodily Injury Claim; (2) declaring that there is no duty to defend or indemnify Jumper Man under the Policy in connection with the Bodily Injury Claim; and (3) awarding the amounts paid in defense of Jumper Man in connection with the Bodily Injury Claim.

## FACTUAL BACKGROUND

### The Bodily Injury Claim

7. On April 30, 2021, Josh Zwagil hosted a birthday party at his home in Henderson, Nevada. Jumper Man supplied a "trackless train" for the party. Four members of the Zwagil family and five members of another family boarded the train and arranged themselves behind the attendant in the "trackless train's" three cars. The train allegedly rolled over during operation and the occupants were purportedly injured.

8. By email dated May 6, 2021 from Josh Zwagil to Jumper Man, Josh Zwagil alleged that the trackless train rolled over and crushed several of its occupants after Jumper Man's driver decided to take the train down a steep decline. Josh Zwagil requested Jumper Man's insurance information and stated that he would hand the matter over to his attorney if he did not receive the insurance information within 48 hours.

9. Counsel for the injured parties issued a demand letter dated May 13, 2022 on behalf of two of the claimants and stated that demands as to the other claimants would be submitted at a later date. The amount of the alleged damages as to the two initial claimants exceeds $75,000.

10. Section 4.04.020(a) of the Henderson municipal code provides that "[i]t shall be a violation of the provisions of this title and unlawful for any person to commence, carry on, engage in or continue in the city any business without first obtaining a license and paying the appropriate license fee as provided by terms and provisions of this title."

11. At the time of the Event on April 30, 2021, Jumper Man's business license in the city of Henderson, Nevada had expired as of October 31, 2020 and had not been renewed.

## The Policy

12. Underwriters issued Event Liability Claims Made and Reported Insurance Policy No. ZISMB1227 to Jumper Man for the July 8, 2020 to July 8, 2021 Policy Period (the "Policy"). A copy of the Policy (without the Policy Application and with confidential premium information redacted) is attached hereto as **Exhibit "A."**

13. Subject to the Policy's other terms and conditions, the Policy's relevant Insuring Agreement (Insuring Agreement A.1.) provides:

> **Bodily Injury and Property Damage**
>
> The Underwriters will pay on behalf of the **Insured, Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Bodily Injury** or **Property Damage** to which the coverage applies caused by an **Accident.** This insurance applies only if:
>
> a) The **Accident** occurs on or after the Retroactive Date set forth in Item 12 of the Declarations, occurs only while the **Insured** is engaged in a **Covered Activity** and takes place in the **Coverage Territory**; and
>
> b) The **Bodily Injury** and/or **Property Damage** occurs during the **Policy Period** set forth in Item 2 of the Declarations, occurs only while the **Insured** is engaged in a **Covered Activity** and takes place in the **Coverage Territory;** and

c)   A **Claim** or **Claims** for **Damages** because of the **Bodily Injury** or **Property Damage** is first made against the **Insured** during the **Policy Period** and reported in writing to the Underwriters during the **Policy Period** or any applicable **Extended Reporting Period.**

14.   The Policy defines Claim to mean "a written notice received by the **Insured** of an intention to hold the **Insured** responsible for compensation for **Damages**, including the service of suit or institution of arbitration proceedings against the **Insured**." Policy Section VI.(f).

15.   The Policy defines **Bodily Injury** as a "physical injury (including death resulting therefrom), sickness, disease or disability. **Bodily Injury** shall not mean mental injury, mental illness, mental anguish, humiliation, emotional upset, shock or other similar condition." Policy Section VI.(e).

16.   The Policy defines **Accident** to mean "an unintended and unexpected event, including continuous or repeated exposure to substantially the same general harmful conditions, and involves one or more persons or entities, taking place on or after the Retroactive Date stated in Item [ ] of the Declarations and **Covered Activity**." Policy Section VI.(a). The Policy's Retroactive Date is July 8, 2020. Policy, Declarations Item 12.

17.   The Policy defines **Covered Activities** as those activities specified in Item 11 of the Declarations. Policy Section VI.(h). Declarations Item 11 lists the "Covered Activities" as "Operation of Scheduled Entertainment Devices". The Jumper Man Party Rentals 2020 Inventory lists as Item #114 "Trackless Train".

18.   Policy Section XXX. LICENSURE provides that:

A.   It is a condition precedent to the coverage afforded under the Policy that the facilities of the **Named Insured** and any **Insured** requiring a license to practice or carry out any event shall be

licensed in accordance with all relevant federal, state and local requirements. The **Named Insured** warrants that as of the inception date of this Policy it has secured all relevant licenses.

B. If, during the **Policy Period**, any **Insured's** licensure status is altered by withdrawal, revocation, denial, suspension or failure to renew, the **Named Insured** shall give written notice of such change to the Underwriters within thirty days of the change becoming effective. Following receipt of such notice, the Underwriters may elect, at their sole option, to revise any Insuring Agreements[,] Definitions, Exclusions, Endorsements or other Conditions of this Policy with respect to the **Insured**, with effect from such date of such withdrawal, revocation, denial, suspension or failure to renew. Such action does not waive the Underwriters' option to invoke the provisions of Section XX Cancellation of this Policy. Furthermore, the Underwriters will have no obligation to respond to any **Claim** arising out of an any one fire or an **Accident** or an offense which took place subsequent to the date the of withdrawal, revocation, denial, suspension or failure to renew.

19. Policy Section XXXIII. WARRANTIES provides, in relevant part: By acceptance of this policy, the **Insured** warrants that the **Insured**:

a) observes and complies with the requirements of any law, ordinance, court or regulatory body of whatever jurisdiction.

b) ensures that all necessary contractual arrangements have been made and confirmed in writing with the **Insured** and that all necessary authorisations (which for the avoidance of doubt shall

include, but not be limited to, the obtaining of licences, permits, visas, copyright and patents) are obtained in a timely manner and valid for the period of the **Covered Activity.**

c)   ensures that mechanical bulls used in any **Covered Activity** comply with both equipment and operational standards that would be considered standard for the industry;

d) basic safety rules are posted where all participants as well as bystander can see them and comply with them; …

20.   Jumper Man tendered the Bodily Injury Claim for coverage under the Policy.

21.   Underwriters agreed to defend Jumper Man in connection with the Bodily Injury Claim, subject to a full reservation of rights under the Policy, including all rights to recoup defense costs to the extent there is no coverage under the Policy for the Bodily Injury Claim.

## COUNT I

**(Declaratory Relief – No Duty to Defend – Policy Section XXX)**

22.   Beazley repeats and incorporates by reference the allegations in paragraphs 1 through 21 of the Complaint.

23.   As a condition precedent to coverage, Policy Section XXX required Jumper Man to warrant that as of the inception date of the Policy it had secured all relevant licenses required to practice or carry out an event.  Further, under Policy Section XXX, if any relevant license required to practice or carry out an event was withdrawn, revoked, denied, suspended, or not renewed during the Policy Period, Underwriters have no obligation to respond to any **Claim** arising out of a subsequent **Accident**.

24. Jumper Man was required to maintain a business license with the city of Henderson in order to carry out the Event.

25. When the Event occurred on April 30, 2021, Jumper Man's business license with the city of Henderson had expired as of October 31, 2020.

26. An actual, present, and bona fide justiciable controversy exists between Beazley, on the one hand, and Jumper Man, on the other, regarding Underwriters' obligations under the Policy insofar as Beazley contends that Underwriters have no duty to defend Jumper Man in connection with the Bodily Injury Claim because Policy Section XXX precludes coverage due to the expiration of Jumper Man's business license with the city of Henderson while, upon information and belief, Jumper Man contends otherwise.

27. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

28. Beazley is entitled to a declaration that Underwriters have no duty to defend Jumper Man in connection with the Bodily Injury Claim because Policy Section XXX precludes coverage.

## COUNT II

**(Declaratory Relief – No Duty to Indemnify – Policy Section XXX)**

29. Beazley repeats and incorporates by reference the allegations in paragraphs 1 through 28 of the Complaint.

30. As a condition precedent to coverage, Policy Section XXX required Jumper Man to warrant that as of the inception date of the Policy it had secured all relevant licenses required to practice or carry out an event. Further, under Policy Section XXX, if any relevant license required to practice or carry out an event was withdrawn, revoked, denied, suspended, or not renewed during the Policy Period, Underwriters have no obligation to respond to any **Claim** arising out of a subsequent **Accident**.

31. Jumper Man was required to maintain a business license with the city of Henderson in order to carry out the Event.

32. When the Event occurred on April 30, 2021, Jumper Man's business license with the city of Henderson had expired as of October 31, 2020.

33. An actual, present, and bona fide justiciable controversy exists between Beazley, on the one hand, and Jumper Man, on the other, regarding Underwriters' obligations under the Policy insofar as Beazley contends that Underwriters have no duty to indemnify Jumper Man in connection with the Bodily Injury Claim because Policy Section XXX precludes coverage due to the expiration of Jumper Man's business license with the city of Henderson while, upon information and belief, Jumper Man contends otherwise.

34. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

35. Beazley is entitled to a declaration that Underwriters have no duty to indemnify Jumper Man in connection with the Bodily Injury Claim because Policy Section XXX precludes coverage.

## COUNT III

**(Declaratory Relief – No Duty to Defend – Policy Section XXXII)**

36. Beazley repeats and incorporates by reference the allegations in paragraphs 1 through 35 of the Complaint.

37. Pursuant to Policy Section XXXIII, by accepting the Policy, Jumper Man warranted, among other things, that it observed and complied with all legal requirements of the jurisdictions it operated in and that it obtained all necessary licenses, permits, and other authorizations for its operations.

38. Jumper Man was required to maintain a business license with the city of Henderson in order to carry out the Event.

39. When the Event occurred on April 30, 2021, Jumper Man's business license with the city of Henderson had expired as of October 31, 2020.

40. An actual, present, and bona fide justiciable controversy exists between Beazley, on the one hand, and Jumper Man, on the other, regarding Underwriters' obligations under the Policy insofar as Beazley contends that Underwriters have no duty to defend Jumper Man in connection with the Bodily Injury Claim due to Jumper Man's failure to comply with the requirements of Policy Section XXXIII while, upon information and belief, Jumper Man contends otherwise.

41. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

42. Beazley is entitled to a declaration that Underwriters have no duty to defend Jumper Man in connection with the Bodily Injury Claim due to Jumper Man's failure to comply with the requirements of Policy Section XXXIII.

## COUNT IV

**(Declaratory Relief – No Duty to Indemnify – Policy Section XXXII)**

43. Beazley repeats and incorporates by reference the allegations in paragraphs 1 through 42 of the Complaint.

44. Pursuant to Policy Section XXXIII, by accepting the Policy, Jumper Man warranted, among other things, that it observed and complied with all legal requirements of the jurisdictions it operated in and that it obtained all necessary licenses, permits, and other authorizations for its operations.

45. Jumper Man was required to maintain a business license with the city of Henderson in order to carry out the Event.

46. When the Event occurred on April 30, 2021, Jumper Man's business license with the city of Henderson had expired as of October 31, 2020.

47. An actual, present, and bona fide justiciable controversy exists between Beazley, on the one hand, and Jumper Man, on the other, regarding Underwriters' obligations under the Policy insofar as Beazley contends that Underwriters have no duty to indemnify Jumper Man in connection with the Bodily

Injury Claim due to Jumper Man's failure to comply with the requirements of Policy Section XXXIII while, upon information and belief, Jumper Man contends otherwise.

48. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

49. Beazley is entitled to a declaration that Underwriters have no duty to indemnify Jumper Man in connection with the Bodily Injury Claim due to Jumper Man's failure to comply with the requirements of Policy Section XXXIII.

## **COUNT V**
### **(Recoupment/Restitution/Unjust Enrichment)**

50. Beazley repeats and incorporates by reference the allegations in paragraphs 1 through 49 of the Complaint.

51. Underwriters agreed to defend Jumper Man in connection with the Bodily Injury Claim, subject to a full reservation of rights, including but not limited to the right to recoup from Jumper Man any and all defense costs if it is determined that no coverage is afforded for the Bodily Injury Claim.

52. No coverage is afforded under the Policies for the Bodily Injury Claim pursuant to Policy Sections XXX and XXXII. Underwriters therefore do not have a duty to defend Jumper Man in connection with the Bodily Injury Claim and never had a duty to defend Jumper Man in connection with that claim. Accordingly, amounts paid by Underwriters in defense of the Bodily Injury Claim are not and were not owed by Underwriters under the Policy, and Underwriters are therefore entitled to recoup such amounts from Jumper Man. It would be unjust and inequitable to allow Jumper Man to keep the benefit of amounts paid under the Policy for which it was not entitled, and so Underwriters are entitled as a matter of law and equity to recoup payments under the Policy from Jumper Man.

53. Because the Policies do not provide coverage for Jumper Man in connection with the Bodily Injury Claim, Beazley is entitled to an order requiring

Jumper Man to make restitution (as keeping such benefits would be unjust) and to reimburse all amounts paid under the Policy in connection with the Bodily Injury Claim, including prejudgment interest thereon.

54. An actual and justiciable controversy exists between Beazley, on the one hand, and Jumper Man, on the other, regarding the right to recoupment of defense costs paid under the Policy in connection with the Bodily Injury Claim insofar as Beazley contends that there is a right to recoupment of defense costs paid in connection with the Bodily Injury Claim while, upon information and belief, Jumper Man contends otherwise.

55. By virtue of the foregoing, Beazley is entitled to a judgment against Jumper Man awarding all amounts paid under the Policy in connection with the Bodily Injury Claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Beazley prays for the following relief and for judgment against Jumper Man as follows:

## **COUNT I**

1. A judgment declaring that Underwriters have no obligation to defend Jumper Man in connection with the Bodily Injury Claim pursuant to Policy Section XXX.

## **COUNT II**

2. A judgment declaring that Underwriters have no obligation to indemnify Jumper Man in connection with the Bodily Injury Claim pursuant to Policy Section XXX.

## **COUNT III**

3. A judgment declaring that Underwriters have no obligation to defend Jumper Man in connection with the Bodily Injury Claim pursuant to Policy Section XXXIII.

## COUNT IV

4. A judgment declaring that Underwriters have no obligation to indemnify Jumper Man in connection with the Bodily Injury Claim pursuant to Policy Section XXXIII.

## COUNT V

5. A judgment against Jumper Man awarding all amounts paid under the Policy in connection with the Bodily Injury Claim, including all defense costs incurred in defending that claim, because Underwriters had no duty to defend or pay such amounts under the Policy for the Bodily Injury Claims.

## ALL COUNTS

6. For Beazley's costs of suit herein; and

7. For such other relief as this Court deems just and proper.

Dated: November 7, 2022.

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/ Brody R. Wight*
Brody R. Wight
Nevada Bar No. 13615
8985 S. Eastern Ave., # 200, Las Vegas, NV 89123 (Nevada Office)
600 Peachtree St. NE #3000, Atlanta, GA 30308
(Corporate Office)
Tele: (470) 832-5586; Fax: (404) 962-6800
brody.wight@troutman.com

KEVIN F. KIEFFER
Nevada Bar No. 7045
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: (949) 622-2700
Email: kevin.kieffer@troutman.com

*Attorneys for Plaintiff Beazley Underwriting Ltd.*

133443216