UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Beazley Underwriting LTD,<br><br>            Plaintiff<br><br>    v.<br><br>Jumper Man Party Rentals, LLC,<br><br>            Defendant | Case No. 2:22-cv-01884-CDS-MDC<br><br>**Order Granting Defendants' Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 20] |

This is an insurance action brought by plaintiff Beazley Underwriting LTD (Beazley) against Jumperman Party Rentals, LLC[1] (Jumperman). Beazley brings four claims for declaratory relief under the insurance policy and one claim for recoupment/restitution/unjust enrichment. ECF No. 1. Beazley moves for summary judgment on all five counts. ECF No. 20. The motion is fully briefed. For the following reasons, I grant summary judgment in favor of Beazley and kindly direct the Clerk of Court to close this case.

I.    **Background**

    **A.  Jumperman**

Jumperman is a single-member limited liability company, formed in 2007, by owner and operator Gonzalo Cisneros. Cisneros Decl., Def's. Ex. 1, ECF No. 28-1 at ¶¶ 1–2. Jumperman rents bounce houses and related entertainment equipment for parties and events throughout Clark County. *Id.* at ¶ 3. This includes the City of North Las Vegas, the City of Las Vegas, unincorporated Clark County, the City of Henderson, and Boulder City. *Id.* at ¶ 4.

    **B.  The Policy**

Jumperman obtained a general liability insurance policy (the "Policy") through its broker, Zodiac Insurance Services, Inc., from "certain Underwriters at Lloyd's, London," which was syndicated between two Beazley entities. The Policy was effective from July 8, 2020,

---

[1] Erroneously sued as Jumper Man Party Rentals, LLC.

through July 8, 2021 (the "Policy Period"). Insurance Policy, Def's. Ex. 7, ECF 28-8; Cisneros Decl., Def's. Ex. 1, ECF No. 28-1 at ¶ 8.

Jumperman's municipal business licenses were all current and valid at the inception of the policy on July 8, 2020. Cisneros Decl., Def's. Ex. 1, ECF No. 28-1 at ¶ 7. At the time of the incident that gave rise to this action, Jumperman's license with the City of Henderson had expired. *Id.* at ¶¶ 9–17.

Subject to the Policy's other terms and conditions, the Policy's relevant Insuring Agreement (Insuring Agreement A.1.) provides:

> 1. **Bodily Injury and Property Damage**
>
> The Underwriters will pay on behalf of the **Insured, Damages** and **Claims Expenses** which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** for **Bodily Injury** or **Property Damage** to which the coverage applies caused by an **Accident**. This insurance applies only if:
>
> a) The **Accident** occurs on or after the Retroactive Date set forth in Item 12 of the Declarations, occurs only while the **Insured** is engaged in a **Covered Activity** and takes place in the **Coverage Territory**; and
>
> b) The **Bodily Injury** and/or **Property Damage** occurs during the **Policy Period** set forth in Item 2 of the Declarations, occurs only while the **Insured** is engaged in a **Covered Activity** and takes place in the **Coverage Territory**; and
>
> c) A **Claim** or **Claims** for **Damages** because of the **Bodily Injury** or **Property Damage** is first made against the **Insured** during the **Policy Period** and reported in writing to the Underwriters during the **Policy Period** or any applicable **Extended Reporting Period**.

Insurance Policy, Def. Ex. 7, ECF No. 28-8 at 9.

Policy Section XXX. LICENSURE provides that:

> A. It is a condition precedent to the coverage afforded under the Policy that the facilities of the **Named Insured** and any **Insured** requiring a license to practice or carry out any event shall be licensed in accordance with all relevant federal, state and local requirements. The **Named Insured** warrants that as of the inception date of this Policy it has secured all relevant licenses.
>
> B. If, during the **Policy Period**, any Insured's licensure status is altered by withdrawal, revocation, denial, suspension or failure to renew, the **Named Insured** shall give written notice of such change to the Underwriters within thirty days of the change becoming effective. Following receipt of such notice, the Underwriters may elect, at their sole option, to revise any Insuring Agreements[,] Definitions, Exclusions, Endorsements or other Conditions of this Policy with respect to **the Insured**, with effect from such date of such withdrawal, revocation, denial, suspension or failure to renew. Such action does not waive the Underwriters' option to invoke the provisions of Section XX Cancellation of this Policy. Furthermore, the Underwriters will have no obligation to respond to any **Claim** arising out of an any one fire or an **Accident** or an offense which took place subsequent to the date the of withdrawal, revocation, denial, suspension or failure to renew.

*Id.* at 46–47.

Further, Policy Section XXXIII. WARRANTIES provides, in relevant part:

> By acceptance of this policy, the **Insured** warrants that the **Insured**:
> a) observes and complies with the requirements of any law, ordinance, court or regulatory body of whatever jurisdiction.

b) ensures that all necessary contractual arrangements have been made and confirmed in writing with the **Insured** and that all necessary authorisations (which for the avoidance of doubt shall include, but not be limited to, the obtaining of licences, permits, visas, copyright and patents) are obtained in a timely manner and valid for the period of the **Covered Activity**.

c) ensures that mechanical bulls used in any **Covered Activity** comply with both equipment and operational standards that would be considered standard for the industry;

d) basic safety rules are posted where all participants as well as bystander can see them and comply with them; …

FAILURE TO COMPLY WITH ANY OF THE WARRANTIES ABOVE VOIDS COVERAGE.

*Id.* at 47–48.

**C.   The Incident**

On April 30, 2021, Josh Zwagil hosted a birthday party at his home in Henderson, Nevada (the "Event"). Holly Supp. Decl., ECF No. 30 at 2. Jumperman supplied a "trackless train"[2] for the party. *Id.* The trackless train allegedly rolled over and crushed several of its occupants after Jumperman's driver decided to take the train down a steep decline (hereinafter "the Accident"). 5/6/21 Email, Pl.'s Ex. 1, ECF No. 14-1 at 5. Zwagil requested Jumperman's insurance information and stated that he would hand the matter over to his attorney if he did not receive the insurance information within 48 hours. *Id.* Counsel for the injured parties issued a demand letter dated May 13, 2022 on behalf of two of the claimants and stated that demands as to the other claimants would be submitted at a later date. Pl.'s Ex. 2, ECF No. 14-2.

---

[2] A trackless train has a lawnmower engine with three connected trailers that can be ridden on streets or sidewalks. Cisneros Decl., Def's. Ex. 1, ECF No. 28-1 at ¶ 15.

1   It is undisputed that at the time of the Accident on April 30, 2021, Jumperman's business license in the city of Henderson, Nevada[3] had expired (as of October 31, 2020) and had not been renewed. *See* Cisneros Decl., Def's. Ex. 1, ECF No. 28-1 at ¶¶ 9–17.

Jumperman tendered the Bodily Injury Claim for coverage under the Policy. Beazley agreed to defend Jumperman in connection with the Bodily Injury Claim, while reserving its full rights under the Policy. 5/28/21 H. Kelly Letter, Pl.'s Ex. 8, ECF No. 13-8 at 3 ("[P]lease note that any communications, discussions or requests for information by Underwriters, or TransEleven on its behalf, shall not be interpreted in any way as a waiver, change, invalidation, or forfeiture of Underwriters' rights under the Policy or at law. Please further note that Underwriters do not intend to waive any other available coverage defenses that may exist, but which are not apparent at this time."). Beazley learned about Jumperman's failure to maintain its Henderson business license on October 6, 2022, at which time it stopped collecting premiums from Jumperman and subsequently alerted Jumperman that it would not be covering the Accident. Kelly Supp. Decl., ECF No. 30 at ¶ 2; *see also* Cisneros Decl., ECF No. 28-1 at ¶ 17.

## II.   Legal standard

Rule 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted). The movant bears the initial burden of identifying

---

[3] Section 4.04.020(a) of the Henderson municipal code provides that "[i]t shall be a violation of the provisions of this title and unlawful for any person to commence, carry on, engage in or continue in the city any business without first obtaining a license and paying the appropriate license fee as provided by terms and provisions of this title."

those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, then the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III. Analysis

### A. Beazley's motion for summary judgment on claims I, II, III, and IV is granted.

Beazley moves for summary judgment on claims I and II, seeking a judicial declaration that it had no duty to defend nor indemnify Jumperman under the Policy pursuant to Policy Section XXX. ECF No. 20 at 14–17. It argues that, under Policy Section XXX, Jumperman was required to maintain all licenses needed to carry out its operations under federal, state, and/or local law as a condition precedent to coverage, and if any relevant license was withdrawn, revoked, denied, suspended, or not renewed during the Policy Period, Beazley had no obligation under the Policy to respond to any Claim arising out of a subsequent Accident which occurred in the city in which the license was withdrawn, revoked, denied, suspended, or not renewed. *Id.*

Beazley also argues that it is entitled to declaratory judgment on claims III and IV because Beazley had no duty to defend nor indemnify Jumperman because it failed to comply with Section XXXIII ("Warranties") of the Policy. ECF No. 20 at 17–20. Pursuant to that section, Jumperman warranted that it had and would comply with all legal requirements of the jurisdictions in which it operated (i.e., having and maintaining all required licenses, permits, etc.) and failure to do so would not only constitute a breach of the Policy but would also bar coverage pursuant to the Bodily Injury Claim provision. *See* Insurance Policy, Def's. Ex. 7, ECF 28-8 at 47–48.

### *1. Read as a condition precedent, or as an exclusion, Section XXX of the Policy precludes coverage of the Accident.*

In Nevada, if contract language is clear, it will be enforced as written. *Buzz Stew, LLC v. City of N. Las Vegas*, 341 P.3d 646 (Nev. 2015); *see also Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990) ("It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written."); *Am. First. Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (explaining that unambiguous contracts are enforced as written).

When contracting, a promisor may incorporate into the agreement a "condition precedent"—that is, an event that must occur before the promisor becomes obligated to perform. *Cain v. Price*, 415 P.3d 25 (Nev. 2018); *see also NGA #2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163, 168 (Nev. 1997) (A condition precedent to a contractual obligation "calls for the performance of some act after a contract is entered into, upon which the corresponding obligation to perform immediately is made to depend."). Nevada law enforces coverage conditions and precludes coverage when a violation of such a condition occurs, irrespective of prejudice to the carrier. *Joseph v. Hartford Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 138431, *5 (D. Nev. Sept. 30, 2014) (citing *Schwartz v. State Farm Mut. Auto. Ins.*, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009)). "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that it complied with that term." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011).

Here, the language of Policy Section XXX (Licensure) explicitly states that "[i]t is a **condition precedent** to the coverage afforded under the Policy that the facilities of the Named Insured and any Insured requiring a license to practice or carry out any event shall be licensed in accordance with all relevant federal, state and local requirements." Insurance Policy, Def's. Ex. 7, ECF 28-8 at 46 (emphasis added). The parties agree (and, thus, there is no material dispute of fact) that Jumperman was not licensed in Henderson at the time of the Event. As such,

Jumperman's failure to meet the condition precedent in this case precludes coverage. *See Jet Test & Transp., LLC v. Hallmark Ins. Co.*, 2021 WL 4486317, at *4 (D. Nev. Sept. 30, 2021) (failure to meet condition precedent that pilot operating aircraft meet specific certification requirements precluded coverage); *Kindinger v. Esurance Prop. & Cas. Ins. Co.*, 2015 WL 2250052, at *3 (D. Nev. May 13, 2015) (failure to meet condition precedent that insured submit to independent medical examination in connection with accident precluded coverage); *Joseph*, 2014 WL 4829061, at *3 (same).

To the extent Section XXX of the Policy is better understood as an exclusion[4] rather than a condition precedent, the same result ensues. To preclude coverage under an insurance policy's exclusion provision, an insurer must: (1) draft the exclusion in obvious and unambiguous language, (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court. *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 674 (Nev. 2011). And, while decided in the context of safety-related exclusions in aviation insurance policies, *Griffin v. Old Republic Ins. Co.* suggest that insurance exclusions will be upheld generally if they are "unambiguous, narrowly tailored, and essential to the risk undertaken by the insurer." 133 P.3d 251 (Nev. 2006).

The plain language of the Policy appears to be inconsistent with Beazley's concession at oral argument, namely that Beazley would have to provide coverage for an Accident in other locations where the license had not lapsed. This inconsistency arguably renders this provision ambiguous. In Nevada, "an insurance policy is considered ambiguous if 'it creates [multiple] reasonable expectations of coverage as drafted.'" *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (citing *Powell*, 252 P.3d at 674). The Supreme Court of Nevada instructs that when

---

[4] At oral argument, Jumperman remained committed to its argument that Beazley's actions constituted a cancellation of the Policy, which is addressed further herein. The court inquired about whether Beazley's denial of coverage was an exclusion. Beazley stated it was arguably an exclusion, but either way, the result is the same. Given the arguments of the parties at the hearing, the court to evaluates whether Section XXX operates as an exclusion herein.

interpreting ambiguities in insurance contracts, the court should interpret it against the drafter, which is typically the insurer. *Id.* The purpose behind interpreting the policy against the drafter is to effectuate the insured's reasonable expectation (*see Farmers Ins. Exch. v. Young,* 832 P.2d 376, 377 (1992)), so clauses are broadly interpreted so as to afford the greatest possible coverage to the insured. *Nat'l Union Fire Ins. Co. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (1984). On the flipside, clauses are also narrowly interpreted *against* the insurer. *Id.* (emphasis added).

   Broadly construing Section XXX of the Policy as an exclusion and applying it against Beazley leads to the same conclusion: the Policy was not cancelled, and further, coverage was properly excluded. The Policy's obvious and unambiguous language demonstrated that, at a minimum, it was within Beazley's right not respond to any obligation or claim arising from Accidents in the city or place in which the Insured was not licensed at the time of the Accident. In other words, Jumperman was not covered under the contract for Claims in connection with the unlicensed activities it undertook in Henderson on the day of the Accident. *See* Insurance Policy, Def's. Ex. 7, ECF 28-8 at 47 ("Underwriters will have no obligation to respond to any Claim arising out of [] an Accident or an offense which took place subsequent to the date the of withdrawal, revocation, denial, suspension or **failure to renew**.") (emphasis added). Moreover, Section XXX is narrowly tailored because it "clearly and distinctly communicates to the insured the nature of the limitation," as described above. *Griffin*, 133 P.3d at 251.

   Finally, the licensing requirement is germane to the essential risk undertaken by Beazley because being unlicensed is illegal in Nevada, and the absence of a license may have immediate legal implications in any liability suit brought against an insured. Here, the Policy's exclusion provision includes pertinent unambiguous exclusion language: coverage under the Policy *does not apply* "to any Claim or any liability based upon or arising out of a breach, violation or alleged breach or violation of any federal, state, municipal or local Special events rules, laws, regulations and any amendments thereto, breach, **violation or failure to obtain or comply with any state or federal license or permit needed for the Covered Activity under this insurance, including**

9

**but not limited to any caterers, food, liquor (if covered only under this insurance), events authorizations, licenses or permits.**" Insurance Policy, Def's. Ex. 7, ECF 28-8 at 17 (emphasis added). Simply stated, Jumperman did not have the proper permit from the City of Henderson at the time of the Accident, so the unambiguous exclusion of the coverage was triggered.

Whether reading Section XXX as a condition precedent or as an exclusion, Jumperman is appropriately denied coverage for its failure to maintain the Henderson license at the time of the Accident.

Once it is determined that an insurer had no duty to defend, they are entitled to reimbursement. *See Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 691 (Nev. 2021) (holding that reimbursement is appropriate if "a court determines that an insurer never owed a duty to defend"). Because I find that Beazley had no duty to defend or indemnify Jumperman for the Accident, I find it is entitled to reimbursement. *See Jet Test*, 2021 U.S. Dist. LEXIS 188261 at *13.

Because I find that coverage is properly denied under Section XXX, I do not reach the issue of whether coverage could have been denied pursuant to Section XXXIII.

**B.   Jumperman's additional arguments for coverage are unavailing.**

Jumperman makes several arguments for why Beazley was required to provide coverage for the Accident, each of which is unavailing for the following reasons.

1.   *This was not a mid-term cancellation.*

Jumperman first argues that Beazley's refusal to cover this claim is equivalent to a mid-term policy cancellation and that Nevada Revised Statutes (NRS) 687B.320 prohibits insurers from canceling an insurance policy in the middle of a policy term without demonstrating that the impetus for cancellation (the policy violation) "substantially and materially increase[d] the hazard insured against" or the "risk of loss". ECF No. 27 at 7–8 (citing NRS 687B.320). Jumperman then points out that the lapse of the Henderson general business license did not substantially or materially increase its risk of loss, nor the hazard insured against, and thus Beazley was not permitted to cancel the policy and deny coverage. *Id.* This argument fails

because, simply, Section XXX is not a cancellation provision, nor did Beazley cancel the Policy in name or substance. The relevant section states "[Beazley] will have no obligation to respond to any Claim arising out of [] any one fire or an Accident or an offense which took place subsequent to the date the [] withdrawal, revocation, denial, suspension, or failure to renew." ECF No. 28-8 at 47. Jumperman argues that this representation is inconsistent with the plain language of the Policy and Beazley's response to the Claim in this case. Jumperman also argues that Beazley's wholesale lack of obligation to respond to *any* claims during any lapse in licensing is the same as a cancellation of the Policy. ECF No. 27 at 16. I disagree.

The Policy makes clear that Beazley's avenue to cancel or revise the Policy is through a separate section, Section XX, had Beazley received notice that Jumperman's licensing conditions changed. *See* Insurance Policy, Def.'s Ex. 7, ECF 28-8 at 46–47 ("Following receipt of such notice, the Underwriters may elect, at their sole option, to revise any Insuring other Conditions of this Policy with respect to the Insured, with effect from such date of such withdrawal, revocation, denial, suspension or failure to renew. Such action does not waive the Underwriters' option to invoke the provisions of Section XX Cancellation of this Policy."). As represented by counsel at the hearing, Beazley would have been obligated to respond to other Claims arising out of cities where Jumperman was properly licensed at the time; thus, Beazley's refusal to cover this Claim in Henderson did not amount to a mid-term policy cancellation and the requirements of NRS 687B.320 are not implicated here.[5]

---

[5] Jumperman repeats this argument by asserting that the Licensure requirement is actually a condition subsequent, not precedent, and that "Beazley is trying to cancel Jumperman's Policy effective October 31, 2020" and therefore "[u]nder NRS 687B.320, [] Beazley must demonstrate that the act or omission caused the 'risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.'" ECF No. 27 at 9–12. Jumperman does not cite serviceable Nevada points or authorities that support the argument that the language here operated in reality as a condition subsequent. As discussed herein, Beazley did not cancel the Policy—it declined to provide coverage based on the Policy's language.

### 2. *Jumperman was required to have a Henderson business license and Henderson's failure to provide notice for renewal is irrelevant.*

Jumperman next argues that (1) its "facility" was properly licensed, and it was not required to maintain an event license, and (2) that, even if it was, Henderson failed to give notice of the October 2020 business license renewal, and thus that "[i]mposing an unrelated cancellation of an entire insurance policy based on an administrative oversight would not comply with the purpose of the Municipal Code[.]" ECF No. 27 at 15–17. I disagree with both.

Jumperman argues that Section XXX states that "the facilities of the Named Insured and any Insured requiring a license to practice or carry out any event shall be licensed" and that Jumperman's only "facilities" were located in North Las Vegas at its office on 3870 Civic Center Drive and there is no dispute that Jumperman's North Las Vegas business license was in full effect throughout the Policy Period. ECF No. 27 at 16.

This is far too narrow a read. Policy Section XXX provides that "any Insured requiring a license" to "*carry out any event shall be licensed in accordance with **all** relevant federal, state and local requirements.*" ECF No. 28-8 at 46 (emphasis added). Jumperman was required to maintain a business license in Henderson to conduct business in that city and to operate the trackless train. *See* Henderson Municipal Code § 4.04.020 ("It shall be a violation of the provisions of this title and unlawful for any person to commence, carry on, engage in or continue in the city *any business*[6] without first obtaining a license and paying the appropriate license fee as provided by terms and provisions of this title.") (emphasis added). Thus, the absence of such license was a violation of Section XXX.

Further, the responsibility to ensure that it was complying with the terms of its contract was ultimately on Jumperman—not the City of Henderson. Even if Henderson were required to

---

[6] "Business" is defined as "any business, commercial enterprise, trade, occupation, calling, profession, vocation, or activity engaged in, conducted, carried on, advertised, or held out to the public to be a business by any person, his agent, or employee for the purpose of gain, benefit or advantage, either direct or indirect, with the principal objective of livelihood and/or profit through repetitive means." *Id.* at § 4.04.010.

give notice of renewal, that would not change the bilateral obligations between Jumperman and Beazley. And, in fact, the Henderson Municipal Code makes clear that "[Henderson's] failure to notify any licensed business of the approaching license expiration shall not be held to waive the payment of the license fee, and, that *the actual receipt of such notice is in no case required.*" Henderson Municipal Code § 4.04.100 (emphasis added). Thus, I find that Jumperman was both required to maintain its lapsed Henderson business license and that Henderson's failure to provide notice of renewal to Jumperman is irrelevant.

### 3. *Beazley did not waive its rights, so it is entitled to summary judgment on claim V.*

Jumperman also argues that Beazley waived its right to cancel coverage after the fact. ECF No. 27 at 18–19. I disagree.

"[I]f insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach." *Phoenix Mut. Life Ins. Co. v. Raddin*, 120 U.S. 183, 196 (1887); *cf. McKeeman v. General Am. Life Ins. Co.*, 111 Nev. 1042, 1047 (1995) ("[A] past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time") (quoting *McCary v. John Hancock Mutual Life Insurance Co.*, 236 Cal. App. 2d 501 (Ct. App. 1965)).

Jumperman states that Beazley continued to accept premiums from it in 2020, 2021, and 2022, and thus waived its "right to avoid the policy for that breach." ECF No. 27 at 18. Jumperman asks: "When did Beazley learn that Jumperman's Henderson business license had previously lapsed in October 2020? We don't have an answer to this question yet, as there has been no discovery in this case." *Id.* In reply, Beazley affirms that it did not learn about Jumperman's failure to maintain its Henderson business license until October 6, 2022, at which time it stopped collecting premiums from Jumperman. Kelly Supp. Decl., ECF No. 30 at ¶ 2; *see also* Cisneros Decl., ECF No. 28-1 at ¶ 17. There is nothing in the record which disputes this

affirmation and the record demonstrates that Beazley explicitly reserved its rights prior to defending the claim. *See* Reservation of rights letter, Pl.'s Ex. 9, ECF No. 13-9 at 8 (discussing defending Jumperman "[s]ubject to a full reservation of rights under the Policy and applicable law...."). Thus, I do not find that Beazley waived its rights.

Accordingly, Beazley is entitled to summary judgment. Beazley is also entitled to reimbursement from Jumperman, in the amount of $2,587.50, the cost incurred for defending Jumperman in connection with the Bodily Injury Claim as of August 1, 2022, and any other appropriate costs incurred since.

## IV. Conclusion

IT IS THEREFORE ORDERED that Beazley's motion for summary judgment [ECF No. 20] is GRANTED.

The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

Dated: May 3, 2024

_____
Cristina D. Silva
United States District Judge